Good morning, Your Honors, and may it please the Court. My name is Elsa Felgar. I'm a Deputy Attorney General for the state of Nevada, and I represent respondents in this matter. I'd like to reserve three minutes for rebuttal, and I'll watch my time. Respondent requests reversal of the federal district court's order with instructions to deny federal habeas relief. Before discussing de novo review, I'd like to address epidefference. Here, the federal court failed to give deference owed to the Nevada Appellate Courts when deciding Grounds 1 and Ground 3. In Ground 1, the federal court failed to analyze the Nevada Court of Appeals' determination that the canvas was thorough. Instead, the court subjectively decided that the canvas distorted and created confusion as to the possible sentences, and then used that determination to find that the Nevada Court of Appeals erred in calling the canvas thorough. And the same happened in Ground 3. I would like to focus on Ground 1 regarding de novo review. The state court's misstatement before and after the recess did not change the fact that King Hardiman knew he faced life without the possibility of parole. Following the misstatements, the trial court stated that he would listen carefully at sentencing and that King Hardiman faced a fixed term, 20 to 50, whether it was life with or it's life without. That's at 3R569. Following the canvas, King Hardiman filed a motion to withdraw his plea and dismiss counsel. And nowhere in either of those two motions does he state that he did not understand the sentencing ranges. He focuses on counsel. He understood that he faced life without the possibility of parole going into the plea agreement. He signed the guilty plea agreement with the correct sentences. The sentences were listed on the first and second page. And he admitted at the post-conviction evidentiary hearing that he knew he faced life without the possibility of parole prior to the canvas. During that post-conviction evidentiary hearing, he starts out by saying that he doesn't remember talking to counsel about sentences. But then when pressed by the district attorney and then further by the court, he does admit that he spoke to counsel many times regarding the sentences, regarding the facts, regarding the case, and the possibilities of what could happen if he were to plead or go to trial. In addition, prior to the misstatement from the trial court, his attorney did state on the record to clarify that King Hardiman faced life without the possibility of parole following King Hardiman, following an issue with whether or not King understood what his sentences were. And finally, when discussing coercion in his motion to dismiss counsel, he states that because Judge Barker allowed such illegal tactics, King Hardiman was highly intimidated by Cano into believing Judge Barker would allow the DA to perform more profound illegal tactics during trial. King Hardiman will be certainly be convicted of either life without parole or death penalty, which indicates that Mr. King Hardiman, again, understood that he faced life without the possibility of parole. And it's important in this case, and I'd like to stress the point that in Brady v. United States, to determine whether a defendant's plea was knowing, voluntary, and intelligent, we must consider the totality of the circumstances. And in order to do that, we have to look at what happened before the plea, which is evident in the post-conviction evidentiary hearing, during the plea, and what counsel's correction during the plea, and the court's statements after the two misstatements, before and after the recess. And when we look at the motion to withdraw counsel and the motion to, or excuse me, dismiss counsel and the motion to withdraw the plea. So all that taken, taking the totality of the circumstances, King Hardiman understood that he faced life without the possibility of parole. The court's misstatements did not change that, and they didn't change that because he started out knowing the correct sentences, and he states that in his post-conviction evidentiary hearing. And then once the court, before the court even makes a statement, King Hardiman has some issue, and so the court does what it needs to do and stops the canvass. There's an issue, he's not agreeing to the plea, let's stop. And that's when counsel asks for a recess to explain, presumably the sentencing ranges, because that was the issue that happened right before the recess. And then afterward, although the court does say 20 to life without the possibility of parole, that doesn't invalidate the fact that King Hardiman knew prior to the canvass that he faced life without the possibility of parole. And also the 20 to life without the possibility of parole represents a summary of the ranges of sentences. So he knew 20, which was the minimum, and he knew life without the possibility of parole, which was the maximum. So he knew that when he signed his plea agreement and when he pled guilty. If your honors have no further, no questions on ground one, I will move on to ground three. Here's not. Thank you, your honors. Trial counsel was also not ineffective during the plea canvass. His counsel corrects the court during, or excuse me, prior to the court making any kind of misstatement. He does state, no, your honor, he faces, or the DA can argue for life without the possibility of parole. When there is an issue, his counsel stops and speaks to King Hardiman at a recess in private. He has a moment with his client. He determines that that is what needs to happen. So he's effective in recognizing that there needs to be some kind of conversation. And then presumably he does speak to King Hardiman. There's nothing in the record to indicate otherwise that he speaks to King Hardiman about the issue that just occurred. And then King Hardiman no longer has any questions. And counsel did not need to correct the court because it is clear from the record that he spoke to counsel, excuse me, counsel spoke to King Hardiman prior to the plea and at the recess. So there was no reason for him to stop. And if your honors don't have any questions, then I will reserve the rest of my time for rebuttal. It appears not, counsel. Thank you. Thank you. It reflexes. Morning, counsel. Good morning. And may it please the court, Margaret Lambrose on behalf of Apali Andre King Hardiman. I will watch my time. Thank you. Nonsensical, confusing and troubling is how the lower court described the plea canvas in this case. This court should find the same and affirm. As to ground one, which is a record based direct appeal claim, Boykin is clear because of the fundamental rights a defendant gives up by admitting to his own guilt, the knowing and voluntary nature of the guilty plea must be plain from the record. The record in this case from the guilty plea canvas is anything but clear. The court repeatedly told Mr. King Hardiman that one of the sentences that he could receive pursuant to the guilty plea was 20 to life without the possibility of parole. Such a sentence does not exist under Nevada law. Counsel, is it fair to say that your argument is that your client was unaware that he was subject to life without the possibility of parole? Is that your argument? No, Your Honor. So I think that there is an important distinction. Mr. King Hardiman was aware of the sentence that he could face if he went to trial and he was found guilty at trial. That evidence came out at the post-conviction hearing, at the evidentiary hearing. Mr. King Hardiman made clear that his lawyers had explained to him that had he gone to trial and been found guilty, he could face life without the possibility of parole. The important distinction here is one, because this is a direct appeal claim, the court only considers the evidence that was before the appellate court at the time of the sentencing, at the time of the change of plea, and at the time of the hearing. I'm sorry, Your Honor. But is your argument then that he didn't understand at the time of the plea that he was subject to a sentence of life without the possibility of parole? Is that your argument? That is my argument, Your Honor. Is that argument based on the misstatement that was made by the court? That argument is based on the misstatement made by the court, and that argument is based on the fact that the plea agreement and any benefits that come along with pleading guilty is different than when a person chooses to go to trial and can be convicted at trial. So are you saying that we don't look to the plea agreement to determine whether or not he was made aware that he faced a sentence of life without the possibility of parole as a result of the plea agreement? You're telling us we can't look at the plea agreement to make that determination? No, Your Honor. What are you saying? So the court does look to the plea agreement, and the court looks to the circumstances surrounding the plea canvas. So the plea agreement and the plea canvas and the circumstances surrounding that, where Mr. King-Hardeman had waited for six years for his day in court to go to trial, the morning of his trial, he's given a plea agreement. He has a very short amount of time to review it, and he believes that by pleading guilty, he will not receive a sentence of life without the possibility of parole if convicted. Does the plea agreement say that? What does the plea agreement say? No, Your Honor. The plea agreement— The plea agreement does inform him of the possibility of life without the possibility of parole. The plea agreement does correctly reflect the possible sentencing ranges under first-degree murder. And the plea agreement also has a certificate from counsel that says counsel has advised the defendant of the penalty that's possible, right? It does. And that's why under Boykin and Brady and its progeny, it is so important to look at the totality of the circumstances. Yeah, so you would agree that at best what we have is sort of mixed evidence, right? He might have understood or received information from both the plea agreement as well as from his counsel, and then there were these confusing statements made by the court, correct? So, Your Honor, I think that if we're going to consider the evidence, I think that we have strong evidence that he received incorrect information from the court about the sentencing possibilities, and we have less strong evidence, and I would go as far to say weak evidence, that he understood the consequences of pleading guilty by his signature on the guilty plea, knowing— What I'm having trouble with is, given sort of the mixed evidence, as I think you acknowledge, and sort of we can disagree about, you know, what constitutes strong or weak evidence, but the reality is that there is mixed evidence, and our ability to review this, given the deference that's owed the court, the state court, I'm having difficulty understanding how we can find that the state court's determination was objectively unreasonable. Well, first, Your Honor, it's my position that deference is not owed to the state court's determination, because the state court's determination found that Mr. King-Hartiman was thoroughly canvassed, and that any confusion regarding the guilty plea was cleared up by his counsel during the recess, and I think a plain reading of this transcript from the plea canvas shows that Mr. King-Hartiman did not understand when he entered that courtroom that he was pleading guilty to an agreement that had life without the possibility of parole on the table. Immediately at the beginning of the plea canvas, the first thing that Mr. King-Hartiman says is, I'm not taking anything that includes a life sentence, which obviously shows he didn't understand the plea agreement. But then he ultimately, after the recess, and was asked again with the understanding that he would have, could potentially face a sentence of life without the chance of parole, agreed to the plea, correct? Well, so, but the problem with what happened after the recess is, after the recess, the court again misadvised Mr. King-Hartiman about the sentencing exposure he faced pursuant to the plea agreement. The court again said, you're facing 20 to life without the possibility of parole, and then the court said, you're facing 20 on the bottom life with. The court never explained to Mr. King-Hartiman that the sentence that he could receive by pleading guilty and foregoing his constitutional right to trial was a sentence of life without the possibility of parole. That was never explicitly told to him by the court. And then Mr. King-Hartiman goes on during the plea hearing to show obvious confusion about the facts that he was pleading guilty to. When the court asked, you know, Mr. King-Hartiman, do you understand that you're pleading guilty to facts that show premeditated murder? Mr. King-Hartiman said, wait a minute, I'm pleading guilty to that. And it makes sense that he would have been confused, and he would have not agreed to plead to anything that would avail him to first-degree murder, because he intended to proceed to trial with a heat of passion defense. And what can I ask, what is the significance of the exchange of sentencing when the court says there are three options, life without, life with, and a 20 to 50 structure? We went through it when I took your plea. And the answer is not, you know, hey, wait a minute, I didn't know that life without was on the table. The answer is just yes. I mean, doesn't that support, I mean, that is, isn't that some evidence supporting the state court's view of what happened here? Well, at that point, Your Honor, I think taking into consideration the procedural posture of the case at that time, Mr. King-Hartiman, by that point at sentencing, had already tried to withdraw his plea, had already tried to terminate his lawyers, had done everything, had tried to even appeal the decision denying his motion to withdraw the plea prior to sentencing. Everything that he had done had shown him that there was nothing more that he could do to challenge his plea agreement until after sentencing, when then he would be able to appeal the direct appeal claim related to the voluntariness of the plea. So I don't think that that is evidence that Mr. King-Hartiman knew that he was essentially looking at a life without the possibility of a parole sentence at the time he entered his plea agreement. I think that's just evidence that Mr. King-Hartiman was aware there was nothing more he could do until he appealed his conviction. I mean, because the — I mean, maybe, but a review of that transcript suggests that he wasn't really shy about objecting to things that he disagreed about. So, I mean, isn't this — I mean, maybe I'm just repeating the question, but isn't this sort of, you know, a call that the state court gets to make, you know, with a fairly heavy level of deference from us? Well, Your Honor, I think that when you say that Mr. King-Hartiman was not shy, I think that that is true, because something else that Mr. King-Hartiman made clear during the his heat of passion trial defense. So, you know, I think that from the sentencing hearing, what we see is somebody who wanted to go to trial, who is still advocating his trial defense, and had done everything that he could have done up until that point to try to withdraw the plea. Counsel, what's your strongest Supreme Court — United States Supreme Court decision that this canvas was not thorough? Boynkin v. Alabama, Your Honor. Yes, I would say Boynkin is my strongest case on that point. So, I do want to also make clear that, you know, my position is consistent with the lower court's position, and I think the lower court got it right when it found that deference should not be given to the state court's decision in this case. Because there is no reasonable way to determine that the canvas was thorough, given what we know happened at the plea canvas. Second, trial counsel were — unless the court has any more questions about Claim 3, I'll turn to Claim 4. Well, I do. I want to know the precise language in Boynkin that supports the argument that the plea canvas in this case was not thorough. What precise language are you relying on? Well, so in Boynkin, the court specifically said, because a guilty plea is an admission to all the — You on? Oh, I apologize, Your Honor. I don't have the page. Okay. But I do have the site for the court. Okay. 395 U.S. 238-242. 242, okay. Yes, Your Honor. I'm there.  So the guilty plea is an admission to all elements of a formal criminal charge. It cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts. I don't see that on page 242, but even so, that doesn't discuss the canvas and what's required for a canvas to be considered thorough. Well, Your Honor, in order for the court to determine that the plea is voluntary, all of the facts, including the court's canvas, must be considered in the voluntariness analysis. Indeed. But I was hoping that you could point me to some language that specifically discusses the canvas and what's required. This case talks generally about the safeguards before a guilty plea is accepted, but it doesn't really definitively address the canvas specifically. Would you agree? I would agree with that, Your Honor, but I do think that the canvas is one important part of the entire analysis that must be undertaken to determine whether or not the plea is voluntary and knowing. And then Brady also, Brady v. United States stated, pleading guilty is a grave and solemn act to be accepted only with care and discernment. Well, that cuts both ways, because if it's grave and solemn, then the representations he made about understanding the plea agreement and signing the plea agreement, those are also grave and solemn. So the court is entitled to rely on those representations as well. So it cuts both ways. That's correct, Your Honor. But I do think that because this is a due process constitutional right to the voluntary and knowing nature of the plea, that the court is also required to ensure that that plea is given knowing and voluntarily. And I think that when the court misstates something as serious as the potential penalties, when a defendant has made it clear that he will not and does not intend to accept a sentence of life without the possibility of parole, and then we have a court telling him that he will receive a sentence of something, 20 to life without the possibility of parole, without ever explicitly saying life without the possibility of parole, the totality of the circumstances there go to show that the plea was not knowing and voluntary. And I see that I am out of time, so I will just, in sum, the Constitution does not permit a conviction to stand when the plea was secured through a fundamental misunderstanding about the direct consequences that come from pleading guilty. The lower court properly granted relief, and this court should affirm. Thank you, counsel.  Good morning. I'd like to start with that no case talks about the specific language that needs to in a plea canvass. There's no talismanic language that needs to be said. And so a court is allowed to explain, has the ability and the flexibility to explain a plea canvass the way that it needs to. It doesn't have the flexibility to make statements that are inaccurate, correct? That is correct. That's correct. And this is not a model canvass. However, the court, although they made misstatements, one before and one after the recess, the misstatements did not specifically contradict what was in the guilty plea agreement. Instead, it was a range of sentences. It still showed or it still explained that he had a minimum of 20 and a maximum of life without the possibility of parole. And I think it's also important to note that when the court made that misstatement, it didn't just say 20 to life. The court specifically said life without the possibility of parole, and that was the maximum sentence. And again, King-Harteman knew that prior to the plea canvass that he faced life without the possibility of parole because he says so in the post-conviction evidentiary hearing. And the lower court looked at the canvass and made a subjective decision by reviewing the canvass without giving deference to the Nevada Court of Appeals. The Nevada Court of Appeals did not unreasonably determine that the canvass was thorough because the canvass allowed King-Harteman to raise questions, recessed to allow counsel to confer with King-Harteman, reviewed whether King-Harteman read and understood the constitutional rights within the plea, explained the mechanics of the sentencing hearing, presented King-Harteman with the minimum and maximum sentences in accordance with NRS 200-0304B, clarified the possible legal theory supporting first-degree murder, and reviewed the factual allegations presented in the amended superseding indictment. So this court in Little also reviewed, although it was not the same misstatement, it had to do with whether it was a probational offense, the court did outline what happened during the canvass to make it thorough, and it was similar to what happened here. So the court many times also stopped the canvass to ask King-Harteman if he had any questions, and he reminded him that there's a jury waiting. This doesn't need to happen. We can call in the jury now. Your attorneys have done a lot of work to prepare for this, and he still wants to go forward. And then in ground three, just to touch on that briefly, the federal court failed to analyze the Nevada Court of Appeals determination that King-Harteman was correctly informed of the consequences by his attorneys. It's clear from the record that, or I should say it's nowhere in the record that King-Harteman didn't explain to, or sorry, that his counsel, that King-Harteman's counsel didn't explain to him the sentencing ranges. There's talk about what the judge, how unfair the judge would be, and that goes into his coercion argument, but the record does not support the fact that, or the claim that his counsel did not explain to him what sentencing ranges he faced. Any discussion as to whether there was an unreasonable application of Boykin in ground three is misplaced. It's a Strickland case. And so we have to look at whether or not the Nevada Court of Appeals correctly applied Strickland. And I just want to point out that in the federal court's order, the court says that there was a misapplication of Boykin in Strickland. CITES says regarding the Boykin application to look towards ground one, but the court doesn't make a Boykin claim in ground one. It was an unreasonable determination of the facts. So at this point, we have a Strickland claim, and there is no, and the federal court fails to analyze that Strickland claim as it should under given at-put deference. If this court doesn't have any questions for me, I'd ask that this court reverse the federal district court's order with instruction to, or just reverse the federal district court's  Thank you, counsel. Thank you to both counsel for your helpful audience. Case just argued and submitted for a decision by the court that completes our calendar for the morning. We are on recess until 930 a.m. tomorrow morning. This court for this session stands adjourned.
judges: RAWLINSON, MILLER, DESAI